NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>SHERRIE NICOLE LOCKHART-<br>JOHNSON,<br>　　　　　Debtor. | BAP No. CC-25-1153-GLS<br><br>Bk. No. 2:20-bk-10969-BB<br><br>Adv. No. 2:20-ap-01073-BB |
| SHARLENE WILLARD,<br>　　　　　Appellant,<br>v.<br>SHERRIE NICOLE LOCKHART-<br>JOHNSON; STEVE TODD JOHNSON,<br>　　　　　Appellees. | **MEMORANDUM**[*] |

Appeal from the United States Bankruptcy Court
for the Central District of California
Sheri Bluebond, Bankruptcy Judge, Presiding

Before: GAN, LAFFERTY, and SPRAKER, Bankruptcy Judges.

## INTRODUCTION

Appellant Sharlene Willard seeks reversal of the judgment entered in

favor of chapter 7[1] debtor Sherrie Nicole Lockhart-Johnson ("Debtor") and

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

her non-filing spouse, Steve Todd Johnson, on Willard's complaint to except from the community discharge a debt incurred by Johnson. Pursuant to § 524(a)(3), Willard was required to prove that Johnson's debt was a community obligation, and it would be held nondischargeable in a hypothetical case filed by Johnson.

The bankruptcy court granted summary judgment in favor of Debtor on individual claims for nondischargeability because Willard alleged fraudulent conduct by only Johnson, not Debtor. The court entered judgment after trial because Willard did not establish a basis for nondischargeability in a hypothetical case filed by Johnson.

Willard argues the court erred by granting summary judgment and by entering judgment after trial. She asserts the court erred by denying her motion to recuse and made several errors in its evidentiary rulings. Willard's claims are baseless. We AFFIRM.

## FACTS[2]

### A. Prepetition Events and Debtor's bankruptcy

In 2017, Willard filed a complaint in state court for breach of a contract to perform home repairs against Johnson, Pro-Team Contractor ("Pro-Team"), and Joe Powell, who was Johnson's uncle and the owner of Pro-Team. She obtained a default judgment for $10,395, and subsequently

---

[2] We exercise our discretion to take judicial notice of documents electronically filed in the adversary proceeding and main bankruptcy case. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

2

sought to garnish Debtor's wages, asserting that the debt was a community obligation.

Debtor filed a chapter 7 petition in January 2020 and indicated she was married but either legally separated or living separately from her spouse. Debtor scheduled the debt to Willard as a community debt.

## B.    Willard's adversary complaint

Willard filed an adversary complaint under § 523(a)(2)(A) to hold her claim nondischargeable. She alleged that Johnson fraudulently represented that he was a licensed contractor who then abandoned the job after receiving payment. Willard also alleged that Johnson willfully and maliciously damaged her property. According to Willard, the state court had determined that the debt was not a community debt, but she argued that Debtor was attempting to discharge the debt as a community obligation by listing Willard as a creditor.

Debtor filed a motion to dismiss because Willard did not allege any wrongful conduct by Debtor. At the hearing, Willard stated that she made factual errors in her complaint and, after obtaining transcripts, she realized the state court had not conclusively determined whether the judgment was a community debt.

The bankruptcy court dismissed the complaint with prejudice. Willard appealed, and though we agreed that dismissal was appropriate, we vacated the order and remanded with instructions to dismiss with leave to amend. *Willard v. Lockhart-Johnson (In re Lockhart-Johnson)*, 631 B.R. 38, 49

3

(9th Cir. BAP 2021). We reasoned that Willard conceivably could amend the complaint to assert a claim for relief from the community property discharge under § 524(a)(3) by alleging the existence of a community debt and "sufficient facts to support a hypothetical claim of nondischargeability or denial of discharge against the nondebtor spouse as of the petition date." *Id.* at 48.

On remand, the bankruptcy court granted leave, and Willard filed an amended complaint. She alleged that her judgment against Johnson was a community debt, and that Johnson fraudulently represented that he was a licensed contractor, he was a proprietor of Pro-Team, and he had the expertise to complete the home repairs in a timely manner. Willard asserted that Joe Powell had previously testified that Johnson fraudulently used his business name and license. Willard further alleged that Johnson willfully left a pipe open in her upstairs bathroom which caused extensive water damage, and he destroyed her upstairs bathroom by removing the toilet and sink, breaking the shower tile, ripping out walls, and leaving debris and trash throughout the adjacent room. She maintained that the debt would be nondischargeable under § 523(a)(2)(A) and (a)(6) in a hypothetical case filed by Johnson.

## C. The protective order, motion for summary judgment, and motion to recuse

Neither Willard nor Debtor and Johnson were represented by counsel, and the parties had substantial difficulty in conducting discovery.

Debtor sought a protective order, claiming that Willard violated discovery rules and sought to harass her and Johnson by making damaging statements to people in their churches.

Because of the parties' difficulties in dealing with each other, the court bifurcated the issues for discovery and trial. The court entered an order requiring the parties to conduct and complete any discovery necessary to proceed to trial on the sole issue of whether Willard's claim would be nondischargeable in a hypothetical case filed by Johnson, and to refrain from propounding or responding to any discovery related to whether the debt was a community obligation.

The court then entered a protective order precluding Willard from driving to the homes of Debtor or Johnson and from visiting or telephoning the clergy, agents, or employees of Debtor's or Johnson's church. The order required Willard to utilize only formal discovery devices, and consistent with the order bifurcating issues, to refrain from conducting any discovery concerning the community property issue pending further order from the court.

Debtor then filed a motion for summary judgment. She argued that she did not have financial or business relations with Willard and did not make any misrepresentations to her. The bankruptcy court granted partial summary judgment in favor of Debtor to the extent that Willard sought a nondischargeable judgment against her individually. The court denied

summary judgment to the extent that Willard sought a determination that her claim should be excepted from the community property discharge.

The bankruptcy court set trial on the community property nondischargeability claim for May 23, 2024. Willard did not appear for trial, and the court entered judgment in favor of Debtor and Johnson. The bankruptcy court denied Willard's motion for a new trial, but the United States District Court for the Central District of California ("District Court") reversed. The bankruptcy court set a new trial for August 7, 2025.

In July 2025, Willard filed a motion to recuse Judge Bluebond based on alleged bias. Willard argued that Judge Bluebond's adverse rulings revealed a "biased and prejudiced mindset" and that any reasonable person aware of the facts and circumstances would conclude that Judge Bluebond was biased against her. Willard maintained that her recusal motion was timely because the full extent of Judge Bluebond's bias became evident only after the District Court's decision.

The bankruptcy court denied the motion, reasoning that recusal is not warranted merely because a judge issues adverse rulings; an allegation of personal bias must be based on an extrajudicial source and result in an opinion on the merits on a basis other than what the judge learned from her participation in the case. The court meticulously explained its reasoning for its prior rulings and noted that despite Willard's attempt to paint the court as biased, it ruled in her favor in several other instances during the case.

## D. The trial and the court's ruling

At the new trial, the court heard testimony from Johnson, Willard, and Willard's son, Marcus Curry. The court found Johnson and Curry to be credible, but it found that Willard was not credible because her testimony was inconsistent with documentary evidence and her previous positions, and uncorroborated by any other witness.

Because Joe Powell died prior to trial, the court admitted his deposition transcript and his declaration in lieu of live testimony. The court identified inconsistencies in Powell's testimony and his possible failing mental capacity due to his advanced age.[3] Powell testified both: (1) that Johnson used his Pro-Team business name and license without his knowledge or permission; and (2) that Johnson worked with Pro-Team for many years, he was authorized to secure contracts on behalf of Pro-Team, and he was authorized by Powell to perform the work for Willard. Powell explained that he only tried to disassociate himself from Johnson after Willard promised she would cease efforts to get Powell's contractor's license revoked if the parties agreed to pay her. The court believed the latter version of events to be more credible.

The bankruptcy court concluded that Johnson visited Willard at her property on behalf of Pro-Team with the knowledge and consent of Powell. In a pre-trial stipulation, Willard admitted that Johnson gave her a business

---

[3] At the time of his deposition, Powell was 91 years old.

card for Pro-Team that listed his name and Powell's as well as the contractor's license number for Pro-Team. Willard acknowledged that she checked the license number with the Contractor's State License Board and saw that it was valid. The court took judicial notice of the fact that entering a license number into the Contractor's State License Board website returns the status of the license and the business information of the licensed party. Based on trial testimony and Willard's statements in the pretrial stipulation, the court concluded that Johnson did not misrepresent that he personally held a contractor's license and, alternatively, that Willard did not justifiably rely on any such representation because she checked the information before authorizing the work.

Based on the evidence, the bankruptcy court determined the parties had two contracts. Johnson initially sent Willard a proposal for the work she requested, and after Willard agreed, he performed the work under the first contract to Willard's satisfaction. Willard paid the amount due under the first contract, then asked Johnson to perform additional work. The parties entered into a second contract for repairs to Willard's bathroom, but after Willard informed Johnson she would not be able to pay the amounts due under the second contract and wished to remove certain items from the scope of work, Johnson responded that the contract was a package deal which included discounted prices based on the total work. The court concluded that Johnson stopped work and left the property after the

8

parties were unable to come to an agreement about modifications to the second contract.

The bankruptcy court also held that Willard failed to establish that Johnson damaged the water pipe, either accidentally or intentionally. Because the leaking pipe was discovered by Curry two days after Johnson left the property, and was leaking from a pipe that had burst, not from a pipe that was severed or "left open," the court found that Johnson did not damage the pipe as Willard alleged. Based on the magnitude of the leak, the court reasoned that Willard would have noticed it sooner if Johnson had damaged the pipe. And although Johnson left substantial debris at the premises, it was later removed by Pro-Team.

The bankruptcy court held that Willard breached the second contract by anticipatory repudiation, thus relieving Johnson of any duty to further perform. Willard did not prove any damage proximately caused by Johnson's conduct, and she failed to prove any of the elements of § 523(a)(2)(A) or (a)(6).

Because Willard failed to establish a hypothetically nondischargeable debt, the bankruptcy court held that she could not except the debt from the community property discharge of § 524(a)(3). The court entered judgment in favor of Debtor and Johnson. Willard timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

Did the bankruptcy court err by ruling that Willard's claim against Johnson would not be excepted from discharge in a hypothetical chapter 7 case?

Did the bankruptcy court err by granting summary judgment in favor of Debtor?

Was the bankruptcy court obligated to recuse?

Did the bankruptcy court err by entering the protective order?

Did the bankruptcy court err in its evidentiary rulings?

## STANDARDS OF REVIEW

The ultimate question of whether a claim is nondischargeable is a mixed question of law and fact, which we review de novo. *Carrillo v. Su (In re Su)*, 290 F.3d 1140, 1142 (9th Cir. 2002). Similarly, we review de novo the bankruptcy court's grant of summary judgment. *Patow v. Marshack (In re Patow)*, 632 B.R. 195, 201 (9th Cir. BAP 2021), *aff'd*, 2022 WL 2256325 (9th Cir. June 23, 2022). Under de novo review, "we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014).

We review for abuse of discretion the grant of a protective order, *Beckman Industries, Inc. v. International Insurance Co.*, 966 F.2d 470, 472 (9th Cir. 1992), and the bankruptcy court's denial of a motion to recuse, *Hale v. United States Trustee (In re Basham)*, 208 B.R. 926, 930 (9th Cir. BAP 1997). We also review a bankruptcy court's evidentiary rulings for abuse of

10

discretion and reverse only if any error would have been prejudicial to the appellant. *Van Zandt v. Mbunda (In re Mbunda)*, 484 B.R. 344, 351 (9th Cir. BAP 2012), *aff'd*, 604 F. App'x 552 (9th Cir. 2015). A bankruptcy court abuses its discretion when it applies the wrong legal standard or when its findings of fact or its application of law to fact is "illogical, implausible, or without support in inferences that may be drawn from the record." *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc).

When the appellant challenges the bankruptcy court's factual findings supporting its nondischargeability decision, we review those findings for clear error. *In re Su*, 290 F.3d at 1142. Factual findings are clearly erroneous if they are illogical, implausible, or without support in the record. *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010).

## DISCUSSION

Willard contends the court misapplied the legal standards for nondischargeability and its findings of fact and conclusions of law are unsupported by the record. She maintains the court erred by failing to recuse and by entering summary judgment in favor of Debtor, and she claims the court made numerous evidentiary errors which cumulatively deprived her of due process. But she offers almost no explanation or argument to support her contentions, and we find no basis to disturb any of the court's rulings.

11

**A.    The bankruptcy court did not err by holding that Willard's claim against Johnson would be dischargeable.**

As we explained in the prior appeal in this case, the community property discharge of § 524(a)(3) ordinarily applies to prevent a creditor with a community claim from collecting against community property acquired after the petition date. *In re Lockhart-Johnson*, 631 B.R. at 45. While Debtor's discharge does not affect Johnson's personal liability on the existing judgment debt, "a judgment creditor of the nondebtor spouse on a community claim loses the ability to collect from anything other than the judgment debtor's separate property." *Rooz v. Kimmel (In re Kimmel)*, 378 B.R. 630, 636 (9th Cir. BAP 2007), *aff'd*, 302 F. App'x 518 (9th Cir. 2008).

The community property discharge does not apply to a community claim that has been excepted from discharge under §§ 523, 1228(a)(1), or 1328(a)(1), or if the bankruptcy court determines the claim would be excepted from discharge in a hypothetical case filed by the debtor's non-filing spouse on the same petition date. *See In re Lockhart-Johnson*, 631 B.R. at 45.

After bifurcating the trial, the court determined that Willard did not establish hypothetical nondischargeability of her claim against Johnson and thus could not establish the exception to the community property discharge. We discern no error by the bankruptcy court.

### 1. Section 523(a)(2)(A)

Section 523(a)(2)(A) excepts from discharge any debt "obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." To prevail on a nondischargeability claim under § 523(a)(2)(A), a creditor must prove, by a preponderance of the evidence: (1) misrepresentation, fraudulent omission, or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of his statement or conduct; (3) an intent to deceive; (4) justifiable reliance on the debtor's statement or conduct; and (5) damage proximately caused by its reliance on the statement or conduct. *Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman)*, 234 F.3d 1081, 1085 (9th Cir. 1996).

Willard's assertion of nondischargeability under § 523(a)(2)(A) is based on Johnson's alleged misrepresentation that he was a licensed contractor and the proprietor of Pro-Team. The bankruptcy court believed Johnson's testimony that he made no such representation, and it found Willard not credible. "[W]e give singular deference to a trial court's judgments about the credibility of witnesses . . . because the various cues that 'bear so heavily on the listener's understanding of and belief in what is said' are lost on an appellate court later sifting through a paper record." *Cooper v. Harris*, 581 U.S. 285, 309 (2017) (quoting *Anderson v. City of Bessemer City*, 471 U.S. 564, 575 (1985)). And "[w]here there are two

permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson*, 470 U.S. at 574.

Moreover, Willard's own statements in the pretrial stipulation demonstrate that she did not rely on any purported representation that Johnson personally held a contractor's license because she checked the license number before entering into the agreement, and Johnson performed all work under the first contract to Willard's satisfaction. The bankruptcy court correctly applied the law and did not clearly err in its factual findings regarding Willard's failure to demonstrate nondischargeability under § 523(a)(2)(A).

### 2. Section 523(a)(6)

Section 523(a)(6) excepts from discharge debts arising from willful and malicious injuries to an entity or its property. *Ormsby v. First Am. Title Co. of Nev. (In re Ormsby)*, 591 F.3d 1199, 1206 (9th Cir. 2010); *Barboza v. New Form, Inc. (In re Barboza)*, 545 F.3d 702, 706 (9th Cir. 2008). The willfulness and malice elements are legally distinct and require separate consideration. *In re Su*, 290 F.3d at 1146-47. Under § 523(a)(6), a debt arises from a "willful" injury when the debtor subjectively intends to cause injury to the creditor or subjectively believes that injury is substantially certain to occur. *In re Ormsby*, 591 F.3d at 1206; *In re Su*, 290 F.3d at 1144-46. A debt arises from a "malicious" injury when it is based on: "(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without

14

just cause or excuse." *In re Ormsby*, 591 F.3d at 1207 (quoting *Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1209 (9th Cir. 2001)).

Willard offers no argument relevant to the court's ruling under § 523(a)(6), other than to repeat her claim that "Johnson deliberately severed a water pipe, causing damage and harm," and "intent to cause injury is inferred from deliberate acts certain to cause harm."

The record is devoid of any evidence of a willful or malicious act by Johnson. Willard did not witness any action by Johnson to damage her property, and her contention that Johnson severed or left open the bathroom water pipe is contradicted by Curry's testimony that he found the pipe had burst and was not unconnected. The bankruptcy court's finding that Johnson did not damage the pipe, either intentionally or unintentionally, is logical and supported by evidence in the record.

Willard does not demonstrate clear error in the court's findings, and the bankruptcy court appropriately held that Willard did not prove nondischargeability under § 523(a)(6).

**B.     The bankruptcy court did not err by granting partial summary judgment in favor of Debtor.**

Civil Rule 56(a), made applicable by Rule 7056, provides that summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In reviewing summary judgment, we must view the evidence in the light most favorable to the nonmoving party and draw all justifiable

15

inferences in its favor. *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (citing *Cnty. of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001) and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 n.10 (1986). A material fact is one that "under the governing substantive law . . . could affect the outcome of the case." *Caneva v. Sun Cmtys. Operating Ltd. P'ship (In re Caneva)*, 550 F.3d 755, 760 (9th Cir. 2008) (quotation omitted). A factual dispute is genuine if "a jury could reasonably find in the nonmovant's favor from the evidence presented." *Emeldi v. Univ. of Or.*, 698 F.3d 715, 730 (9th Cir. 2012).

Willard suggests the court erred by granting summary judgment in favor of Debtor because there were disputed facts regarding Johnson's alleged fraudulent conduct. Willard misconstrues the partial summary judgment order.

The court clearly stated that it granted summary judgment to the extent that Willard asserted direct claims for nondischargeability against Debtor individually, but not to the extent that Willard asserted her claims would be nondischargeable in a hypothetical case filed by Johnson. And the court expressly noted: "Nothing contained herein constitutes an adjudication of the extent to which any claims asserted by [Willard] are, or

16

are not, community claims within the meaning of Bankruptcy Code section 524(a)(3)."

The court properly granted summary judgment for individual claims asserted against Debtor because the purported fraud and willful and malicious injury was based solely on Johnson's alleged conduct. Disputed facts regarding Johnson's conduct were relevant to Willard's action to except her claim from the community discharge, but they had no bearing on nondischargeability claims against Debtor individually.

## C. The court did not abuse its discretion by denying the request for recusal.

Willard argues the court erred by denying the motion for recusal because its decisions demonstrate an appearance of bias. Willard claims the court permitted Debtor to sit with and assist Johnson, it made remarks at trial that displayed favoritism toward Johnson, and it reviewed exhibits after testimony and improperly excluded much of Willard's evidence.

Recusal of a bankruptcy judge is governed by 28 U.S.C. § 455. *See* Rule 5004(a); *Seidel v. Durkin (In re Goodwin)*, 194 B.R. 214, 221 (9th Cir. BAP 1996). Section § 455(a) requires a judge to "disqualify [herself] in any proceeding in which [her] impartiality might reasonably be questioned." The judge also must recuse herself when she has a personal bias or prejudice concerning a party. 28 U.S.C. § 455(b)(1).

But, where a judge's impression of a party is formed exclusively from events in the judicial proceedings in question, those impressions "do not

17

constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994); *see also United States v. Holland*, 519 F.3d 909, 913-14 (9th Cir. 2008) ("[Section] 455(a) is limited by the 'extrajudicial source' factor which generally requires as the basis for recusal something other than rulings, opinions formed or statements made by the judge during the course of trial." (citing *Liteky*, 510 U.S. at 554-56)). And, "a judge has [a] strong . . . duty to sit when there is no legitimate reason to recuse . . . ." *Clemens v. U.S. Dist. Ct.*, 428 F.3d 1175, 1179 (9th Cir. 2005) (citation modified).

On appeal, Willard offers no argument why the court erred by denying her motion for recusal. Instead, she points to evidence of alleged bias that occurred at trial, after the court denied the motion for recusal. Her motion for recusal was based entirely on the court's rulings and statements made during the case, none of which support a claim of bias or recusal under 28 U.S.C. § 455. We find no abuse of discretion by the court in denying the motion for recusal.

**D. Willard does not demonstrate reversible error in the court's grant of the protective order or its evidentiary rulings.**

Willard makes conclusive statements that the court erred by entering the protective order, admitting unauthenticated exhibits, relying on fabricated evidence, and selectively handling exhibits.

Willard argues the protective order was overly broad and restricted her ability to obtain testimony essential to her fraud claim. We disagree. The protective order was narrowly tailored to require Willard to utilize formal discovery devices and refrain from driving to Johnson's or Debtor's home or visiting their churches for any reason except to attend worship services or other church events. The order also restricted Willard from propounding discovery related to the community property issue because the court had bifurcated the issues for trial. Willard provides no explanation of how the protective order limited her ability to obtain evidence or testimony, and we discern no abuse of discretion.

Similarly, Willard does not explain how the court erred by admitting the Powell declaration or by excluding certain exhibits, and she does not identify what the excluded exhibits purport to prove. Again, we discern no abuse of discretion.

Moreover, we do not disturb the bankruptcy court's evidentiary rulings unless Willard can demonstrate prejudice. But the court's decision turned primarily on witness credibility. It did not believe Willard's testimony that Johnson made a fraudulent representation or damaged her property, and it believed Johnson's version of events. Thus, Willard has not shown any prejudice caused by the court's evidentiary rulings.

## CONCLUSION

Based on the foregoing, we AFFIRM.